# Wytheville.

## RICHLANDS IRON CO. v. ELKINS.

### July 27th, 1893.

1. EMPLOYEES—*Risks—Instructions.*—In action by employee for personal injuries, it is not error to instruct that a servant entering upon dangerous employment assumes all incident risks, but not extraordinary risks arising from defective machinery, unless he has knowledge thereof, and chooses to remain in the employment.

2. IDEM—*Duty of Employer.*—Nor is it error to instruct that it is employer's duty to use ordinary care to provide reasonably safe and suitable machinery, and that in absence of notice to the contrary, employee is warranted in assuming that employer has performed his duty in so providing. *Improvement Co.* v. *Andrews*, 86 Va., 27.

3. IDEM—*Questions by Jury.*—After instructions to jury and they have retired and returned and stated their inability to agree, it is not error to give them further instructions upon questions submitted by them and discussed by court and counsel for both parties in absence of the jury.

4. EMPLOYER—*Defective Machinery—Case at Bar.*—Where employer leaves a large rapidly revolving cogwheel unprotected, so that tongs carrying large masses of iron are liable to be caught and taken into it and the pieces thrown all about the room with such force as to kill any person with whom they come in contact, after having been warned by a skilled workmen to encase it, such employer *held* liable for an injury to an employee resulting from the tongs catching in the cogs.

5. VERDICT—*Damages.*—A verdict of $2,500 for an injury to an employee— breaking his skull so that a part has to be removed, leaving the brain unprotected—by which his capacity to work is very much impaired, *held*, not excessive.

Error to judgment of circuit court of Tazewell county, rendered at its November term, 1892, in an action of trespass on the case for negligent injury, wherein James Elkins, by his

next friend, was plaintiff and Richlands Iron Company was defendant. From the judgment for the plaintiff the defendant brought the case here on a writ of error and *supersedeas.* Opinion states the case.

*A. J. & S. D. May* and *Chapman & Gillespie*, for plaintiff in error.

*Henry & Graham* and *John H. Fulton*, for defendant in error.

LACY, J., delivered the opinion of the court.

This case is as follows:

At the time the cause of action arose, which was for personal injuries received by the defendant in error, who was an employee of the plaintiff in error, a corporation owning and occupying what is called a puddling or rolling mill, and was engaged in the process of reducing pig iron to wrought iron or muck bars. It is stated that this is done by placing 1200 pounds of pig iron into a furnace, and when the pig iron is smelted, it is then made into six different balls, or masses, and these by means of tongs attached to a trolley, and carried to a machine called a squeezer, and passing through the squeezer it then becomes what is called bloom, and this bloom is rolled into muck bars.

The machine which is called a squeezer is a machine with large wheels and cylinders which are kept in a rotary motion by means of an engine geared thereto.

The operation of carrying the molten metal to the squeezer and passing it through the squeezer is to some extent unavoidably dangerous, therefore all the employees in the mill had been warned, and knew full well, not to be near the squeezer when the molten metal was approaching it or going through it. This molten metal gave out a bright light as it approached the squeezer, which gave warning of its approach by a great

noise, and the peculiar noises of the trolley also gave warning of the approach of the metal. When the metal was in the squeezer there were explosions and loud cracking noises caused by the metal passing through the squeezer.

The plaintiff had been in the employment of the company as scale boy in the mill for about three months before the injury was inflicted. At the time of the injury to the plaintiff there was one iron bar in front of the squeezer, and at the bottom of the cogwheel above the squeezer, which had been put there to prevent the rod which attached the tongs to the trolley above from catching in the cogs of the wheel above the squeezer.

The rolling mill had been in operation about seven months prior to the accident, running day and night, an equivalent of fourteen months ordinary work by day, and in all that time the rod attached to the tongs had never caught in the wheel above the squeezer *until after the tongs* had caught in the squeezer and broken the rod.

At the time the accident occurred, one English was the helper who was carrying the metal to the squeezer, and immediately before, or just at the moment he placed the metal in the squeezer, he fell some six or eight feet to the left of the squeezer, holding the tongs in his hands, and this took the rod beyond the bar or guard fixed at the bottom of the cogwheel, which went only partially in front and around the said cogwheel. And in some way the rod caught in the cogs of the wheel over the squeezer, and the tongs were wrenched from the hands of English and hurled against the plaintiff, striking him in the front part of the head and breaking his skull, so that some of the bone had to be removed and the brain was left unprotected, by which he was greatly injured and his capacity to work very much impaired, but not entirely destroyed.

This action resulted, and upon the hearing the case was tried by the jury under the instructions of the court, and a verdict rendered in favor of the plaintiff for $2,500. Where-

upon the defendant moved the court to set aside the said verdict of the jury, because the same was contrary to the law and the evidence, and because of the misdirection of the court. But the court overruled the motion and rendered judgment on the verdict, and the defendant applied for and obtained a writ of error to this court.

The first question arises here on the instructions of the court. The court was asked for instructions by both sides, but gave certain instructions, to which the defendant excepted.

The plaintiff moved to instruct the jury as follows:

The court instructs the jury that it was the duty of the defendant to exercise ordinary care—that is to say, such care as reasonable and prudent men use under like circumstances—in supplying and maintaining suitable and safe appliances for the performance of the work required and to furnish a reasonably safe place for the employee to work, and generally to reasonably provide for the safety of the servant in the course of his employment, regard being had to the work and to the difficulties and dangers attending it; and if he neglects so to do, he is liable to the employee for an injury resulting therefrom, as he would be to a stranger.

2.

The court instructs the jury that whilst an employee entering upon a dangerous service assumes the risk incident to the service, the negligence of the master is not one of the risks assumed. This is an exception to the general rule.

3.

The court instructs the jury that the risks assumed by an employee are those reasonably incident to the employment, and no others, unless unusual and unreasonable risks are open and visible and known to and comprehended by the employee.

4.

You are instructed that although you may believe from the evidence that the plaintiff was, at the time he received the injuries complained of, disobeying the orders of his instructions of his superiors in being near the squeezer mentioned in the evidence while said squeezer was in operation, with a ball of iron inside thereof, still if you believe that said injury was occasioned not by any dangerous cause arising from the operation of said squeezer, about which he had been cautioned or advised, but from defect in the construction and operation of the squeezer to which his attention had not been directed by the defendant's superior agents in charge thereof, and which was unknown to plaintiff and was not open and obvious to him, then he was not guilty of such contributory negligence as will bar his recovery.

5.

You are instructed that when the plaintiff entered the service of the defendant company and remained in its service and at work about its machinery, he had a right to presume that the defendant had exercised, and would continue to exercise, due and proper care in providing proper machinery for the conduct of the defendant's business about which he worked, and that defendant would protect him from injury therefrom by reason of latent defects, so far as reasonable human care and foresight could accomplish that result, and that the defendant had discharged his duty in this respect, and that said machinery was reasonably free from defects, and it was not incumbent on plaintiff to inspect and examine said machinery to discover latent defects therein; and if you believe the injury complained of by the plaintiff was occasioned by defect in the said machinery which was not open, patent, and obvious to plaintiff, which he, considering his experience, opportunities, and circumstances, could not reasonably discover by due care and observation, and which was or reasonably could have been

known to defendant, you will find for the plaintiff unless you
believe from the evidence that he, knowing of such defect,
did some act to bring about the injury complained of, and you
are further told that. his mere presence at the time of the in-
jury was not such an act as will prevent his recovery.

The defendant moved the court to give the following in-
structions:

### 1.

You are instructed that it was the duty of the defendant
company to use ordinary care and diligence to provide and
maintain for the use of its employees, while in its service,
suitable machinery and such appliances as were reasonably
calculated to insure their safety while performing that par-
ticular service required of them; and if you believe from the
evidence that the defendant company did use ordinary care
and diligence in the construction and maintenance of that por-
tion of its machinery known as the squeezer and used in con-
nection therewith such appliances as were reasonably safe,
then the defendant company discharged its whole duty to the
plaintiff in this particular.

You are further instructed that by "ordinary care and dili-
gence" is meant such watchfulness, caution and foresight as,
under all the circumstances of the particular case, a corpora-
tion, controlled by careful and prudent officers, ought to exer-
cise.

### Instruction No. 2.

The court further instructs the jury that the law does not
require that the defendant company shall so provide and guard
its machinery and appliances as to provide against every possi-
ble danger to its servants and employees, but only requires
that the defendant company shall use ordinary care in select-
ing, providing, guarding, and maintaining its machinery and

appliances so that its servants and employees may work thereat with a reasonable degree of safety.

### Instruction No. 3.

You are instructed that if you believe from the evidence that the defendant company was in fault and negligent in not having more safeguards about the squeezer to prevent the rod to which the tongs were suspended from coming in contact with the cog or spur wheel, and that by reason of such default and negligence on the part of the defendant company, said rod came in contact with said cog or spur wheel and hurled the rod or tongs against the plaintiff and inflicting on him the injuries in the declaration mentioned, and you further believe from the evidence that it was dangerous to be within less than twenty feet of the squeezer when same was in motion, and a ball of molten iron was therein, or about to be placed therein, and he remained within twenty feet of the squeezer and was injured as aforesaid; and if you further believe that said injury to said plaintiff would not have occurred if he had been more than twenty feet away from the squeezer at the time of the said injury to himself, then said injury was the result of the natural concurring fault and negligence of the plaintiff and defendant, and you must find for the defendant company.

### Instruction No. 4.

You are instructed that the defendant company did not insure the safety of the plaintiff while in its employment; its duty to the plaintiff was discharged by the exercise of ordinary care for his safety, and by ordinary care is meant such watchfulness, caution and foresight as, under all the circumstances of the particular service, a careful and prudent man ought to exercise.

You are further instructed that it was the duty of the plaintiff to be reasonably observant of the machinery that he was

required to work near, and inform himself, as far as he reason-.ably could, respecting the dangers in working near that portion of the defendant company's machinery known as the squeezer, and to observe and obey the orders of a superior under whom he worked, and if you believe from the evidence that the plaintiff did not exercise ordinary care in being at the point where he was when injured, and such want of care on his part contributed to his injury, and that the injury to him would not have occurred but for want of care on his part, then you must find for defendant company.

### Instruction No. 5.

The court instructs the jury that it was the duty of the plaintiff to observe and obey the instructions and orders given to him in the conduct of the defendant company, and if you believe from the evidence that the plaintiff wilfully disobeyed and failed to observe the instructions given him by the superintendent, Samuel Duncan, to keep away from the squeezer when it was in motion, and that such disobedience on his part contributed to the injury received by him, and that if he had obeyed said orders and instructions he would not have been injured, then he cannot recover in this action.

### Instruction No. 6.

You are instructed, that if you believe from the evidence, that the injury to the plaintiff was the result of an accident which could not, in the exercise of ordinary care, have been foreseen and provided against, and is not attributable to defective machinery or appliances, which defects could not by the exercise of ordinary care and foresight have been foreseen and guarded against by the defendant company, then you must find for the defendant.

### Instruction No. 7.

The court instructs the jury that, wherever in the instructions given you it is stated to be the duty of the company to provide " safe appliances for the work to be performed," and to provide generally for the safety of the servant in the course of his employment, it means that it is the duty of the company to provide reasonably safe appliances, and to provide generally for the reasonable safety of the servants.

### Instruction No. 8.

You are further instructed that the plaintiff, when he entered the service of the defendant company, took upon himself all the risks incident to the service, and that it was the duty of the plaintiff to use ordinary care for his own safety, and it was also his duty to be reasonably observant of the machinery that he was required to work near, and to inform himself as far as he reasonably could respecting the danger of working near that part of the machinery known as the " squeezer," and it was also the duty of the plaintiff to observe and obey the instructions and orders given him by Samuel Duncan, superintendent, in reference to the work and machinery; and if you believe from the evidence that the plaintiff did not exercise ordinary care and did not obey the orders and instructions of said superintendents, but without ordinary care and in disobedience of said orders and instructions, was near the squeezer at the time said injury was received, and that the want of ordinary care on his part, and his disobedience in being near the squeezer was one of the proximate causes of the injury, and without which said injury would not have been inflicted, then you must find for the defendant.

### Instruction No. 9.

The court further instructs the jury that if they believe from the evidence that, on the night the injury was received, the

plaintiff and John English were both at work in defendant's mill—the plaintiff as scale boy, and the said John English as puddle helper—and that they were both on that night working under the control and orders of Michael O'Neal, who was foreman in the puddling department of said mill, then the plaintiff and said English were in law what are known as fellow-servants; and if the jury should believe that the injury was caused by a negligent act of a fellow-servant of the plaintiff, then the plaintiff cannot recover;—in lieu of which the court thereupon instructed the jury as follows:

The court instructs the jury that a servant entering upon a dangerous employment assumes all the ordinary and natural risks usually incident to such employment; but he does not assume extraordinary risks arising from the use of defective machinery, unless the servant has knowledge of the use of such defective machinery, and then after such knowledge choses to continue in the employment.

### No. 2.

The court instructs the jury that it was the duty of the plaintiff to exercise reasonable, ordinary care and prudence for his own safety, and to obey all reasonable instructions given him by his superiors for his own safety, and to be reasonably observant of all open and obvious dangers naturally incident to the service in which he was engaged whilst in the service of the defendant company, and if the jury shall believe from the evidence that the plaintiff disregarded his duty in any or all of the above recited particulars, and that such disregard by the plaintiff of such duty on his part was the immediate and proximate cause of his injury, then he cannot recover.

### No. 3.

The court instructs the jury that it was the duty of the defendant company to exercise ordinary care in providing rea-

sonably safe and suitable machinery, appliances and instru-
mentalities for the use of the plaintiff as their servant whilst
in the employment of the defendant company, and to provide
generally for the reasonable safety of the plaintiff whilst en-
gaged in the service of the defendant company, and that the
plaintiff, in the absence of notice to the contrary, was war-
ranted by law in relying on the fact that the defendant com-
pany had performed its duty in so providing for his reasonable
safety ; and if the jury shall believe from the evidence that the
defendant company did not in fact perform its duty to the
plaintiff as above stated, and shall further believe from the
evidence that the defendant company was guilty of negligence
in failing so to do, and shall further believe from the evidence
thas such negligence on the part of the defendant company
was the immediate and proximate cause of the injury to the
plaintiff, then they must find for the plaintiff.

After the case had been submitted to the jury, and after
they had had the case under consideration for several hours,
the jury came into court and stated that they could not agree ;
thereupon counsel for plaintiff, in open court, in presence
of the jury—counsel for defendant being also present—asked
the court if he might be permitted to inquire if further in-
structions might not enable them to arrive at a verdict; and
thereupon, without any further discussion, the court sent the
jury back to their room ; then, in the absence of the jury, the
propriety of giving or not giving further instructions to the
jury was discussed by counsel. Whereupon, after such dis-
cussion, the jury, by order of the court, was brought back into
the court-room, and the court then stated to the jury as fol-
lows :

" Gentlemen of the jury, go back to your room and con-
tinue your deliberation, and if in your judgment you need aid
of the court by way of further instruction as to the law of the
case, it is your right to ask it."

And this being all that then occurred, the jury was sent

back to their room to further consider of their verdict, and after a short time returned into court and propounded to the court in writing the following questions, to-wit:

" Can the jury consider the evidence brought out in regard to the man English in the trial of this case ? "

" Are servants in any way implied in the context mentioned (from lines 4 to 16, inclusive, of the declaration) ? "

" What latitude are we given on these questions ? "

The jury was again sent to their room, and, in the absence of the jury, the questions as to what the court's response should be to the queries propounded by the jury were discussed ; whereupon the court prepared its response in writing, and the jury was again brought into court, and the court read its instructions to the jury given in response to said queries, which is in the words and figures following, to-wit :

" 1st. You are to fully consider all the evidence introduced before you in this case."

" 2d. Machinery, appliances and instrumentalities are meant, not servants, except only so far as acts of servants have been offered in evidence to enable you to determine whether there was or was not negligence on the part of the defendant company, as charged in this case."

These instructions given by the court are in substantial accordance with the principles established upon this subject, and there is no error in this action of the circuit court. Beach on Contributory Neg., 42; *So. West. Imp. Co.* v. *Smith*, 85 Va., 306, and cases cited; *So. West. Imp. Co.* v. *Andrew*, 86 Va., 270, and cases cited.

There can be no question raised here as to the amount of the damages. If the injury was caused by the negligence of the company, and they are liable to respond in damages at all, the injury was serious, painful, and permanent, and in personal torts and actions generally sounding in damages, it being within the strict province of the jury to estimate the injury, unless there had been manifest abuse, the court will not inter-

fere.   *Ward* v. *White*, 86 Va., 219; *Rixey* v. *Ward*, 3 Rand., 52; *Daingerfield* v. *Thompson*, 33 Gratt., 136;. Graham & Waterman on New Trials, p. 452.

We will consider, then, whether this company is shown to have been guilty of negligence which was the cause of the accident and consequent injury to the defendant in error.

The defendant company was bound to use ordinary care— that is to say, such care as reasonable and prudent men use under like circumstances—in selecting competent servants, and in supplying and maintaining suitable and safe appliances for the work so to be performed, and in providing generally for the safety of the servant in the course of the employment, regard being had to the work and to the difficulties and dangers attending it, for what would be ordinary care in one case may be gross negligence in another.   *So. West. Va. Imp. Co.* v. *Smith*, 85 Va., 306, citing Beach, Contrib. Neg., 22; Thomp. Neg., 982.

It is the duty of the master, so far as he can by the use of ordinary care, to avoid exposing his servants to extraordinary risks, but he is not bound to guarantee them against such risks.

One who employs servants in a complex and dangerous business ought to prescribe rules sufficient for its orderly and safe management.   His failure to do so is a personal negligence, for the consequences of which he is liable to his servants. *Riley* v. *Baxendale*, 6th Hurst & N., 446; *Vare* v. *Lancashire R. Comp.*, 2d Herbert P. N., 728; Sher. & Red. Neg., 122.

The rolling mill of the plaintiff in error, with its trolley and tongs, its squeezer crushing red masses of molten iron casting off flakes or scales of hot iron, threatening the life and the eyesight of all who worked near it, was an engine of very great danger.

But when we consider the enormous iron cog-wheel, rapidly revolving, into which the iron and tongs were liable to be caught, broken to pieces and hurled about the room or apart-

ment in broken pieces with such force as to be driven through the partition, or to kill any person with whom it came in contact, presents a case of such unusual danger that the company should have been diligent to guard with every means possible against such catastrophies. If this cog-wheel had been encased with a substantial protection, and an obstruction provided to prevent the trolley from rushing over upon it and getting the rod caught, the danger would have been avoided. The company had this subject suggested to it, and had put one band around the front of this cog-wheel, but when it was suggested to it to put a band around the top of this wheel also, neglected to do so.

A skilled workman who happened to be present, and who saw the rod catch in the cog-wheel with disastrous consequences, advised the company to construct an iron band around the top of the said wheel to prevent the recurrence of such accidents, as appears in the photograph exhibited with the record. But the matter was neglected until after the injury in this case, when it was fixed, and now the occurrence of such an accident is impossible.

This presents a case of gross negligence, for which the company is liable. It caused the injury to the defendant in error, and this was the inevitable result of the company's negligence.

There was no contributory negligence on the part of the defendant in error, and he is entitled to recover in this action.

The circuit court having so decided, we are of opinion to affirm the judgment appealed from here.

DECREE AFFIRMED.

NOTE BY REPORTER.—The subject of excessive verdicts in suits for damages for personal injuries is treated in a note to *Standard Oil Co.* v. *Tierney,* (Ky.), 14 L. R. A., 677, giving a large number of particular verdicts passed upon.