LINDSAY L. HILL, *Appellant,* v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellee.*

No. 16,217.

SYLLABUS BY THE COURT.

1. MASTER AND SERVANT—*Defective Appliances—Injury to Employee.* In the absence of wanton or intentional wrongdoing an employer who furnishes defective instrumentalities is liable to an employee only when danger would reasonably be apprehended from their use.

2. ——— *Unforeseen Accident.* If persons of ordinary caution and prudence would not, in the light of the attendant circumstances, anticipate danger in using a defective appliance, and danger is not a natural and probable consequence of such use, liability to an employee for negligence in furnishing it does not arise against the employer.

Appeal from Sumner district court; CARROLL L. SWARTS, judge. Opinion filed December 11, 1909. Affirmed.

### STATEMENT.

THE plaintiff, a fireman, slipped from the steps of his engine as he was going down to turn a switch. His left leg was caught under the wheels of the engine and crushed so as to require amputation. He alleged that the cause of his injury was a coating of ice upon the step, caused by a leak in the tank hose. On the evening of December 12 the plaintiff and the engineer of this locomotive had taken it to the roundhouse at La Junta. This hose was then leaking, the leak being caused by a hole worn through the hose by contact with a metal pipe. The engineer reported this defect by an entry upon a book at the office kept for such reports. The next morning they found the hose still leaking. They called upon the roundhouse foreman for a new hose and were given a requisition upon the storehouse for one, but there was none in stock, and the foreman wrapped the defective hose with rubber, thereby stopping the leak, and directed them to go out upon their trip with the engine, which they accordingly did. They returned with the engine to La Junta on December 17, when they again called the foreman's attention to this defective hose and were told that a new one would be supplied as soon as it could be obtained, but that there was none on hand yet. The engineer said there should be a new hose, as that one was liable to leak or break. The engine was again taken out and worked by these two men until December 22, when they were ordered to run it, without any cars attached, backward from Garden City to Dodge City. This they did, arriving at Dodge City about ten P. M. Down to the time they left Garden City the hose had not leaked, to their knowledge. The position of the hose was behind the steps, and about ten inches from them, and as the engine was moving east that night it was north of the steps. The

wind was blowing from the north, and the night was cold. When slowly approaching the switch leading to the roundhouse at Dodge City the plaintiff, with his lantern swung upon his arm and his switch key in hand, stood with one foot upon the lower step and the other upon the step above, holding to the rails of the cab and tank with his hands. In stepping down to turn the switch his foot slipped from the lower step and he was injured as already stated. It was then discovered that the hose was leaking, and that the step was covered with ice. On cross-examination the plaintiff testified:

"Well, the hose was wrapped and stopped the leaking, but it was liable to break at any time and we kept talking to them about it, wanting them to keep their minds on it so as when they got one they would put it on.

"Q. Is that the reason that you went in and called for the hose after it had been wrapped? A. Yes, sir."

The court sustained a demurrer to the evidence, and this is the ruling complained of.

*W. W. Schwinn,* for the appellant.

*William R. Smith, O. J. Wood,* and *Alfred A. Scott,* for the appellee.

The opinion of the court was delivered by

BENSON, J.: It is stated by counsel that the demurrer was sustained upon the ground that the danger from the leaky hose was one of the risks assumed by the plaintiff in continuing in the service after he had acquired knowledge of the defect. If this were the only reason for the ruling it could not be sustained. As we view the evidence the complaints made concerning the defective hose and the promise given to replace it presented questions of fact concerning the assumption of risk proper for the findings of a jury. (*S. K. Rly. Co. v. Croker,* 41 Kan. 747; *Andrecsik v. New Jersey Tube Co.,* 73 N. J. L. 664; *Hough v. Railway Co.,* 100 U. S. 213.)

The vital question is whether, in requiring the use of

this appliance after notice of its defective condition, the defendant was guilty of such negligence as afforded the plaintiff a right of recovery for the injuries suffered.

In the absence of wanton or intentional wrongdoing an employer who furnishes defective instrumentalities is liable only where danger to the employee would reasonably be apprehended from their use. If persons of ordinary caution and prudence would not, in the light of the attendant circumstances, anticipate danger from the use of a defective appliance, and danger is not a natural and probable consequence of such use, liability to an employee for furnishing such an appliance does not arise. On the other hand, it is held that negligence is a ground of action for an injury where it appears that "the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances." (*Schwarzschild v. Weeks,* 72 Kan. 190, syllabus.) It is also held, however, that it is not necessary that the specific injury should have been foreseen; but only an injury of some character. (*Railway Co. v. Parry,* 67 Kan. 515.) These general principles are supported by other decisions of this court, and the courts of other states, and are stated by text-writers. (*Cleghorn v. Thompson,* 62 Kan. 727; *Railway Co. v. Columbia,* 65 Kan. 390; *Rodgers v. Railway Co.,* 75 Kan. 222; *Leonard v. Collins,* 70 N. Y. 90; *McCallum v. McCallum,* 58 Minn. 288; *Williams v. Railroad Company,* 119 N. C. 746; 1 Labatt, Mas. & Ser. § 142; I Thomp. Com. L. of Neg. §§ 57-59; Bishop, Non-Cont. Law, § 691.)

The hose was used to conduct water from the tank to the injector to supply the boiler. If through leakage it should become inadequate for this purpose, an insufficient supply might result and the natural and probable consequences of such insufficiency would be foreseen; but it does not seem reasonable to the court that the formation of ice upon the steps from the spray borne by the wind from the leak was a consequence which, in

Hill v. Railway Co.

the exercise of reasonable care and caution, ought also
to have been foreseen or anticipated.    The hose was
under the floor of the cab, and about ten inches behind
the steps.   Unless blown aside by the wind or affected
by the movement of the engine water issuing from the
aperture would have fallen harmlessly to the ground.
The contention is, and the evidence tended to support it,
that the action of the wind upon the water thus leaking
from the hose, combined with the freezing temperature,
caused the ice to form upon the steps, and that this ice
caused the plaintiff to fall.   It does not appear that the
plaintiff or the engineer apprehended danger to himself
from the imperfect hose; at least, they did not refer to
such danger in making their complaint, and it seems
fair to presume that they apprehended only loss of
power, inconvenience and delay or other like conse-
quences from the failure of the appliance to serve its
purpose, and not physical harm.   Nor can it be held
that such harm ought to have been apprehended by the
defendant or its officers having charge of such matters.
The conclusion is that a case was not presented upon
which a finding for the plaintiff could have been sus-
tained, and that the court did not err in sustaining the
demurrer.

The judgment is affirmed.

BENSON, J. (dissenting) : I am constrained to dissent
from the conclusion of the court.   The syllabus em-
bodies correct principles of law, but in my opinion the
question whether the defendant exercised reasonable
care and caution in requiring the use of the leaky hose
was one of fact for the jury upon the evidence.   The
care required must be considered in view of the prob-
able perils of the service, and the condition of the ap-
pliance in connection with its use and the place of duty
of the enginemen.   They were in hazardous service, and
reasonable prudence required the exercise of corre-
sponding care in furnishing them with appliances.
Dangers from a defective hose must obviously depend

upon the use made of it, its connection with other instrumentalities, and other circumstances. That a leak in a hose, used as this one was, would cause water to escape; that this was liable to become spray to be borne aside by the wind and cast upon near-by surfaces such as these steps; that ice would be formed therefrom in December in this climate; and that this would be dangerous to those whose duty required the use of the steps, are consequences not so rare, peculiar, improbable or abnormal as to preclude the jury from considering whether they would have been apprehended by the company if reasonable care and foresight had been exercised. (1 Labatt, Mas. & Serv. § 145.) Besides, it was not necessary that this peculiar combination of circumstances should have been foreseen, but only that danger to its servants should have been reasonably apprehended. (*Siegel, Cooper & Co. v. Trcka,* 218 Ill. 559; *Railway Co. v. Parry,* 67 Kan. 515.)

In *Mason & O. R. Co. v. Yockey,* 43 C. C. A. 228, the court of appeals passed upon this question upon a similar state of facts. It appeared in that case that a valve stem which, when turned by a wheel at the upper end, opened a valve below to let water pass out of the tank was out of place, and that a wooden plug had been substituted. This permitted the water to splash, producing spray which was carried by the wind upon the apron connecting the engine and tender, creating thereon an icy covering, upon which the fireman fell, and from thence fell out of the cab and was severely injured. The fireman alleged that the company was negligent in furnishing this defective appliance. The circuit court submitted the question of the negligence of the company to the jury, and the correctness of this ruling was presented for review. The court of appeals, Day, J., said:

"We can not say that the testimony made a case so palpably for the plaintiff in error that it should be resolved in its favor as a matter of law. Questions of this character must be decided upon the facts of each particular case. The company might have known that

Evans v. School District.

it was dangerous in the winter to permit water to escape on the apron, where the employee was constantly obliged to step, and particularly where the track was rough, as it is shown to be in the present case." (Page 232.)

The principles upon which the perplexing boundary between the duties of the judge and jury should be determined have been frequently stated by this court and need not be repeated here. Without quoting further from the opinion just cited, it seems to me fairly to illustrate and apply these principles. If this be true, the district court in the case at bar trespassed upon the functions of the jury: (*Doyle v. The Chicago, St. P. & K. C. Ry. Co.*, 77 Iowa, 607; *Oil City Gas Co. v. Robinson*, 99 Pa. St. 1.)

A further review of the multitude of cases wherein the courts have considered this subject is not thought to be necessary in this dissent.